549 A.2d 1359

Gregory Waslo, Appellant *v.* North Allegheny School District, Appellee.

Argued May 26, 1988, before Judges COLINS and SMITH, and Senior Judge KALISH, sitting as a panel of three.

*Sandra Reher Kushner,* with her, *Stephen H. Jordan* and *Richard K. Olson, Jr., Rothman, Gordon, Foreman and Groudine, P.A.,* for appellant.

*Alfred C. Maiello,* with him, *Lee V. Price, Maiello, Andrews & Price,* and *G. N. Evashavik,* for appellee.

OPINION BY JUDGE SMITH, November 9, 1988:

Appellant Gregory Waslo (Waslo) appeals from an order entered by the Court of Common Pleas of Allegheny County affirming a decision by the North Allegheny School Board (Board) which upheld the suspension of Waslo from his position as an industrial arts teacher. The issue presented for review is whether Waslo was furloughed in violation of Sections 1125.1(a) and 1125.1(c) of the Public School Code of 1949 (School Code).[1] The trial court is affirmed.

Waslo was employed by the North Allegheny School District (District) on January 28, 1981 as a substitute industrial arts teacher to fill the temporary vacancy created by Randall Hart (Hart) who was employed by the District on May 14, 1975 as an industrial arts teacher. On January 21, 1981, Hart assumed the position of public relations coordinator, a non-professional position, during a one-year maternity leave taken by the District's permanent public relations coordinator. Both the Board and the District agreed that Hart would not lose his professional status while serving in the public relations position. On August 19, 1981, Hart assumed an-

---

[1] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§1-101—27-2702.

other position as administrator of support services, a professional position, and from August 20, 1981 to January 4, 1982, he performed the functions of both jobs. On January 4, 1982, upon return of the permanent coordinator of public relations, Waslo was given a temporary professional employee contract as Hart chose to remain in the position of administrator of support services.

Due to a realignment of staff, the District suspended Waslo effective at the conclusion of the 1983-84 school year. The District contended that Waslo's furlough was proper in order to relocate Hart, the more senior employee, whose position as administrator of support services was eliminated due to a substantial decline in student enrollment. As a result of his furlough, Waslo requested a hearing before the Board pursuant to Section 553 of the Local Agency Law, 2 Pa. C. S. §553. After hearings conducted on July 10, 1984 and August 7, 1984, the Board affirmed Waslo's suspension. Waslo appealed the Board's decision to the trial court which affirmed the Board, whereupon Waslo petitioned this Court for review.[2]

Waslo initially argues that Hart voluntarily vacated his professional position as an industrial arts teacher when he accepted a transfer into the non-professional public relations position, the effect of which terminated his status as a professional employee for purposes of ac-

---

[2] This Court must affirm unless it finds a violation of constitutional rights, an error of law, manifest abuse of discretion, or that any necessary findings of fact are not supported by substantial evidence. *Sto-Rox School District v. Horgan,* 68 Pa. Commonwealth Ct. 416, 449 A.2d 796 (1982); Section 754(b) of the Local Agency Law, 2 Pa. C. S. §754(b). Moreover, the party who seeks to have the local agency's discretionary action overturned carries a heavy burden of proof. *Board of Directors of the School District of the City of Scranton v. Roberts,* 13 Pa. Commonwealth Ct. 464, 320 A.2d 141 (1974), *affirmed,* 462 Pa. 464, 341 A.2d 475 (1975).

cruing seniority within the meaning of the School Code. In support thereof, Waslo cites *School District of Philadelphia v. Brockington,* 98 Pa. Commonwealth Ct. 534, 511 A.2d 944 (1986), *appeal denied,* 514 Pa. 644, 523 A.2d 1132 (1987); *Fiorenza v. Board of School Directors of Chichester School District,* 28 Pa. Commonwealth Ct. 134, 367 A.2d 808 (1977); and *Narducci v. School District of the City of Erie,* 4 Pa. Commonwealth Ct. 202, 285 A.2d 888 (1971).

Waslo's reliance upon *Brockington* is misplaced. *Brockington* addressed a demotion issue pertaining to an employee's return to a teaching position from a supervisory position which was eliminated; whereas, the matter *sub judice* involves a professional employee who assumed a non-professional position on a temporary basis with an intent to return to his professional position following his temporary absence therefrom. *Fiorenza* is also inapposite. Fiorenza was a professional employee who *permanently* vacated his position of principal to assume a non-professional position with no intention of returning to his former professional position.

Similarly, *Narducci,* unlike the instant matter, involved an employee who *permanently* left his professional position of principal to serve as an officer of the school board. This Court held that the employee relinquished his professional status since it was legally impossible for him to remain a professional employee and also serve as an officer of the school board under Section 404 of the School Code, 24 P.S. §4-404, which prohibits principals to serve temporarily or permanently as officers of the school boards by which they are employed.[3]

---

[3] Waslo also challenges the District's reasoning that Hart's intention to return to professional status is determinative of whether he has voluntarily vacated a professional position. Intent of the parties involved, however, with respect to an employee's status should

Waslo next argues that Hart's acceptance of the non-professional public relations position concluded his professional teaching activities and thereby terminated his professional employee status under Sections 1101 and 1141 of the School Code, 24 P.S. §§11-1101 and 11-1141, respectively.[4] Although the District stipulated that the coordinator of public relations was a non-professional position,[5] the District maintains that Hart's temporary assignment as public relations coordinator was tantamount to an approved leave of absence from his duties as an industrial arts teacher. Testimony demonstrates that Hart accepted this temporary transfer with the specific understanding that he would not lose his professional status and would return to his industrial arts position at the end of the one-year tempo-

---

not be ignored. *See Pottsville Area School District v. Marteslo*, 55 Pa. Commonwealth Ct. 481, 423 A.2d 1336 (1980).

[4] Section 1101 of the School Code provides as follows:

(1) The term 'professional employe' shall include those who are certificated as teachers, supervisors, supervising principals, principals, assistant principals, vice-principals,. directors of vocational education, dental hygienists, visiting teachers, home and school visitors, school counselors, child nutrition program specialists, school librarians, school secretaries the selection of whom is on the basis of merit as determined by eligibility lists and school nurses.

Teachers are defined in the School Code in Section 1141, 24 P.S. §11-1141, which states as follows:

(1) 'Teacher' shall include all professional employes and temporary professional employes, who devote fifty per centum (50%) of their time, or more, to teaching or other direct educational activities, such as class room teachers, demonstration teachers, museum teachers, counsellors, librarians, school nurses, dental hygienists, home and school visitors, and other similar professional employes and temporary professional employes, certificated in accordance with the qualifications established by the State Board of Education.

[5] N.T., p. 19, July 10, 1984 Hearing.

rary assignment. Findings of Fact No. 8; N.T., pp. 33-35, August 7, 1984 Hearing; N.T., pp. 38-39, July 10, 1984 Hearing. Based thereon, the Board found that Hart's one-year leave from his position as industrial arts instructor was a temporary absence, and in fact, an approved leave of absence. Findings of Fact Nos. 8, 9; Discussion, p. 20. Accordingly, the Board concluded that there was no break in Hart's seniority during the period of time he served in the public relations position. Conclusions of Law No. 5. Furthermore, approved leaves of absence do not constitute a break in service with respect to computing seniority for suspension purposes. Section 1125.1 of the School Code, added by the Act of November 20, 1979, P.L. 465, *as amended*, 24 P.S. §11-1125.1(a).[6] Thus, Hart's seniority continued during the period of his temporary assignment pursuant to provisions of Section 1125.1(a) of the School Code.[7]

---

[6] Waslo argues that the District cannot credibly assert that Hart received an approved leave of absence in light of Section 1125.1 of the School Code, 24 P.S. §11-1125.1(e). Section 1125.1 states that "[n]othing contained in section 1125.1(a) through (d) shall be construed to supercede or preempt any provisions of a collective bargaining agreement." However, testimony, which was accepted by the Board, indicates that the instant collective bargaining agreement covered only disability and unpaid leaves. The type of leave extended to Hart did not fall under either category. N.T., pp. 49-50, August 7, 1984 Hearing. Moreover, the record contains neither a collective bargaining agreement nor any relevant provisions thereof to support Waslo's contention.

[7] Even an *unapproved* leave is not per se a break in service for purposes of seniority calculation. *See Big Beaver Falls Area School District v. Cucinelli*, 112 Pa. Commonwealth Ct. 341, 535 A.2d 1205 (1988). Moreover, even assuming *arguendo* that Hart lost his professional status while solely employed in the public relations position, he regained this status when he accepted a new position as a professional administrator on August 20, 1981. Waslo's seniority did not begin to accrue until January 4, 1982.

Waslo further challenges as error the District's seniority calculations, and thus, in furloughing Waslo to realign Hart, the District violated Sections 1125.1(a) and 1125.1(c) of the School Code which require the District to realign staff in inverse order of seniority and ensure that more senior employees are provided with the opportunity to fill positions being filled by less senior employees. Waslo argues that the District's actions delayed his transfer to professional status for more than one year during which time Hart was offered two positions while simultaneously encumbering an industrial arts position, thereby stripping Waslo of his rights to accrual of seniority as afforded by the School Code. Waslo thus contends that he should have been afforded seniority benefits as a temporary professional employee on January 21, 1981, his date of hire and the effective date on which Hart vacated the industrial arts position.

Substantial evidence of record demonstrates that Hart had not abandoned his position as industrial arts instructor; that the public relations position assumed by Hart was temporary; and that Hart accepted this temporary one-year position with the understanding that he would maintain his professional status and return to his industrial arts position when the permanent public relations coordinator returned from maternity leave. Findings of Fact Nos. 7, 8, 9, 10; Conclusions of Law No. 5. Where, as here, a teacher is hired to fill a position of a regular teacher who fully intends to return, there is no bona fide vacancy. Waslo therefore temporarily filled Hart's professional industrial arts position as a substitute, not a temporary professional employee. Substitute teachers do not accrue seniority. *See Bitler v. Warrior Run School District,* 62 Pa. Commonwealth Ct. 592, 437 A.2d 481 (1981); Section 1101 of the School Code, 24 P.S. §11-1101(2). Moreover, in *Tyrone Area Education Association v. Tyrone Area School District,* 24 Pa.

Commonwealth Ct. 483, 356 A.2d 871 (1976), this Court held that a teacher retained as a substitute to fill a position to which the regular teacher was to return after a sabbatical was not a vacancy and that the position could not retroactively ripen into a temporary professional employee position merely because the teacher on leave subsequently resigned at the end of her leave. Similarly, Hart's industrial arts position was not a vacancy until January 4, 1982 when Hart elected not to return to it.[8] *See also Bitler.*

Substantial evidence therefore supports the Board's findings, affirmed by the trial court, that Waslo was not elevated to temporary professional employee status until January 4, 1982 and did not begin to accrue seniority until such date. Waslo's furlough was thus proper and in accordance with the law. No error of law or abuse of discretion having been committed, the trial court's decision is affirmed.

ORDER

AND NOW, this 9th day of November, 1988, the decision and order of the Court of Common Pleas of Allegheny County is affirmed.

Judge MACPHAIL did not participate in the decision in this case.

---

[8] Waslo also erroneously contends that he held greater seniority than Timothy Vermillion. Vermillion was issued a temporary professional employee contract as an industrial arts instructor on July 1, 1981. Findings of Fact No. 4.